James A. JOHNSON, Appellant,

v.

Luther ROBINSON.

No. 74–1149.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 25, 1974.

Decided Dec. 23, 1974.

Robert P. Stranahan, Jr., Washington, D. C. (appointed by District Court), with whom Daniel D. Polsby, Washington, D. C., was on the brief, for appellant.

Michael G. Scheininger, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Tobey W. Kaczensky and Oscar Altshuler, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, DANAHER, Senior Circuit Judge, and WILLIAM WAYNE JUSTICE,* United States District Judge for the Eastern District of Texas.

BAZELON, Chief Judge:

James Johnson was acquitted by reason of insanity of a charge of assault on December 1, 1961 in District of Columbia Municipal Court. Under procedures then in effect, he was thereupon committed to Saint Elizabeth's Hospital. The offense for which Johnson was committed carried a maximum sentence of one year. Since December 1, 1961, Johnson has filed a total of nine petitions for a writ of habeas corpus to secure his release from Saint Elizabeth's but is still as of

* Sitting by designation pursuant to 28 U.S.C. § 292(d).

this date incarcerated pursuant to the December 1, 1961 commitment order. At no time during the thirteen years of Johnson's commitment has the government borne the burden of proving that Johnson's mental condition falls within the intendment of the District of Columbia commitment statutes.[1]

In his most recent petition for a writ of habeas corpus filed in federal District Court, Johnson argues that he should be released from confinement unless the government bears the burden of proving that his mental condition falls within the intendment of the relevant commitment statutes. In Bolton v. Harris, 130 U.S. App.D.C. 1, 11, 395 F.2d 642, 652 (1968) this Court held that any person acquitted by reason of insanity after the date of the decision is entitled to hearing prior to commitment to a mental hospital in which the government must prove by a preponderance of the evidence that the person should be committed.[2] The decision to apply Bolton only prospectively created an anomalous situation in which an individual in Johnson's situation who was committed under pre-Bolton procedures would never be entitled to a hearing at which the government bore the burden of proving that such an individual was in need of care while a post-Bolton defendant would be entitled to such a hearing prior to commitment. The serious equal protection questions raised by this anomaly were explored in Waite v. Jacobs, 154 U.S.App.D.C. 281, 475 F.2d 392 (1973). In that case, this Court strongly suggested that in order to avoid these serious equal protection questions, the government should be required to prove by a preponderance of the evidence that a pre-Bolton defendant

such as Johnson was in need of care at a post-Bolton habeas corpus hearing, if the pre-Bolton defendant, as is the case with Johnson, has been committed for a period longer than the maximum sentence for which he might have been committed. Johnson requests us to transform the constitutional suggestion of Waite v. Jacobs into a holding and to thereby order that he be released unless the government proves by a preponderance of the evidence that he is presently in need of care. On the first hearing of the case, the District Court agreed.[3]

Upon appeal of the order entered after this hearing, the government for the first time challenged the jurisdiction of the District Court to consider Johnson's habeas petition. This Court then remanded the case to the District Court after receiving a memorandum from the District Court stating that if such a remand were made, he would be disposed to grant the government's motion.[4] After a hearing on December 11, 1973, the District Court did in fact grant the government's motion and dismissed Johnson's petition.[5] Johnson appeals.

The government's argument is premised on 24 D.C.Code § 301(k)(7) (1973) added by the District of Columbia Court Reform and Criminal Procedure Act of 1970. This section provides that any person committed to a hospital for the mentally ill after being acquitted by reason of insanity under the provisions of 24 D.C.Code § 301(d) (1973), as was Johnson, must file a motion under § 301(k)(1) for his release. "[An] application for habeas corpus . . . shall not be entertained if it appears that the

---

1. Johnson was committed under 24 D.C.Code § 301(d) (1967). However, in Bolton v. Harris, 130 U.S.App.D.C. 1, 395 F.2d 642 (1968), this Court held that § 301(d) must be construed in light of 21 D.C.Code §§ 541, 545 (1973). See United States v. Brown, 155 U.S. App.D.C. 402, 403, 478 F.2d 606, 607 (1973).

2. This preponderance of the evidence standard was reaffirmed in United States v. Brown, 155 U.S.App.D.C. 402, 478 F.2d 606 (1973). But cf. In re Ballay, 157 U.S.App.D.C. 59, 61,

482 F.2d 648, 650 n. 7 (1973); State v. Clemons, 110 Ariz. 79, 515 P.2d 324 (1973).

3. Johnson v. Robinson, Hab.Corp. No. 82–72 (D.D.C. June 11, 1973), at 3.

4. Johnson v. Robinson, No. 73–1878 (D.C.Cir. Nov. 14, 1973). This was pursuant to Smith v. Pollin, 90 U.S.App.D.C. 178, 194 F.2d 349 (1952).

5. Johnson v. Robinson, Hab.Corp. No. 82–72 (D.D.C. Dec. 11, 1973).

applicant has failed to apply for [§ 301(k)(1)] relief, . . . unless it also appears that the [§ 301(k)(1)] remedy . . . is inadequate or ineffective to test the validity of his detention." Johnson argues in reply that § 301(k)(1) is an inadequate remedy because § 301(k)(3) requires that he bear the burden of proof.

We first confront the task of defining the scope of the phrase "inadequate or ineffective to test the validity of his detention." As noted in House Report on § 301,[6] this language is copied from the parallel language in 28 U.S.C. § 2255 (1970), which requires that an individual wishing to attack his conviction and sentence must file a motion in the sentencing court and may not resort to habeas relief unless the motion to the sentencing court would be "inadequate or ineffective to test the validity of his detention." However, § 301 does not contain one very important phrase contained in § 2255. Habeas is disallowed under § 2255 "if it appears that the applicant has failed to apply for [§ 2255] relief . . . *or that [the sentencing] court has denied him relief* . . .." The italicized phrase does not appear in § 301(k)(7).

The significance of this omission may be seen in a comparison between the "exhaustion" requirement, if it may be so described, of § 2255 and the exhaustion required in the federal habeas corpus statute, 28 U.S.C. § 2254(b) (1970), and in federal habeas corpus case law.[7] Courts construing the "exhaustion" requirement of § 2255 have almost uniformly held that only the most serious procedural difficulties will permit a habeas petition in lieu of a § 2255 motion. In particular, the courts have held that even a prior unsuccessful § 2255 motion on the same legal question sought to be presented in the habeas petition will not render § 2255 "inadequate or ineffective to test the legality" of the detention.[8] This position seems based on the language quoted in the previous paragraph. On the other hand, the federal courts have uniformly held that an unsuccessful state appeal or state collateral proceeding on the issue sought to be presented in the federal habeas proceeding satisfies the exhaustion requirement and federal habeas will lie.[9] Furthermore, the federal courts have held that a prior, authoritative state court decision rejecting the claim the federal habeas petitioner seeks to present obviates the need for exhaustion of state remedies.[10] Finally, federal

---

**6.** H.R.Rep.No.907, 91st Cong., 2d Sess. 73 (1970): "This statutory release procedure, patterned on 18 [sic] U.S.C. § 2255, would be a substitute for habeas corpus except where it was inadequate or ineffective."

**7.** *See* Preiser v. Rodriguez, 411 U.S. 475, 491–493, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); Picard v. Connor, 404 U.S. 270, 275–276, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971) (Brennan, J.) and cases cited. After Preiser v. Rodriguez, *supra*, it does not appear possible for Johnson to maintain an action for violation of his constitutional rights against the officials at Saint Elizabeth's and thereby avoid the exhaustion requirement on that basis, even if we were to treat his habeas petition in that manner. *Cf.* Wilwording v. Swenson, 404 U.S. 249, 251, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971). *See also* District of Columbia v. Carter, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973).

**8.** *See* Boyden v. United States, 463 F.2d 229 (9th Cir. 1972), cert. denied, 410 U.S. 912, 93 S.Ct. 974, 35 L.Ed.2d 274 (1973); Accardi v. Blackwell, 412 F.2d 911, 914 (5th Cir. 1969); Wood v. Blackwell, 402 F.2d 62 (5th Cir.

1968), cert. denied, 393 U.S. 1060, 89 S.Ct. 703, 21 L.Ed.2d 702 (1969); Litterio v. Parker, 369 F.2d 395 (3d Cir. 1966); Cain v. Markley, 347 F.2d 408 (7th Cir. 1965); Barkan v. United States, 341 F.2d 95 (10th Cir.), cert. denied, 381 U.S. 940, 85 S.Ct. 1773, 14 L.Ed.2d 703 (1965).

**9.** *See* Wilwording v. Swenson, 404 U.S. 249, 250, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971); Brown v. Allen, 344 U.S. 443, 449 n. 3, 73 S.Ct. 397, 97 L.Ed. 469 (1953).

**10.** *See* Sarzen v. Gaughan, 489 F.2d 1076, 1082 (1st Cir. 1973); Layton v. Carson, 479 F.2d 1275 (5th Cir. 1973); Ham v. North Carolina, 471 F.2d 406 (4th Cir. 1973); Perry v. Blackledge, 453 F.2d 856 (4th Cir. 1971); Peters v. Kiff, 441 F.2d 370 (5th Cir. 1971), aff'd on this point, 407 U.S. 493, 494–495 n. 1, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972); Lucas v. Michigan, 420 F.2d 259, 261–262 (6th Cir. 1970); Reed v. Beto, 343 F.2d 723 (5th Cir. 1965), aff'd sub nom. Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967). *Cf.* United States ex rel. Hughes v. McMann, 405 F.2d 773, 775–776 (2d Cir. 1968).

courts have adopted a much less stringent attitude toward the procedural deficiencies which permit a failure to exhaust state remedies.[11]

It is thus a question of no small moment to the relationship between the federal courts in the District of Columbia and the local courts established pursuant to the Court Reform and Criminal Procedure Act of 1970 whether § 301(k)(7) is interpreted in accordance with § 2255 precedent or § 2254(b) precedent. We do not think the bare statement in the House Report making reference to § 2255 necessarily resolves the issue. First, there is the substantial difference in language quoted on the previous page between § 2255 and § 301(k)(7). Second, the reference to habeas corpus in § 301(k)(7) may be only to habeas in the District of Columbia local courts and not to habeas in the federal courts. If this were the case, the § 2255 analogy would be apt to the extent a § 301 motion would foreclose a *local* habeas petition. Third, to permit the § 2255 analogy to control would arguably deprive residents of the District of Columbia of habeas in an Article III court seemingly in violation of established case law.[12] This problem of interpretation is also present in 23 D.C.Code

§ 110(g) (1973) and is directly implicated in two pending appeals in this court.[13]

■ We need not resolve this difficult question in order to dispose of this appeal. We may assume for purposes of decision that the § 2254(b) analogy should prevail and that Johnson will not be required to file a § 301 motion if it appears that the District of Columbia courts will not grant him the relief he requests. However, we cannot say that the District of Columbia courts will in fact so deny him relief. Johnson's argument reduced to essentials is that § 301(k)(3) places the burden of proof on the applicant in all situations and, therefore, his claim is foreclosed. Implicit in this argument is the assertion that the District of Columbia courts will reject the argument presented in Waite v. Jacobs for altering that burden of proof in regard to defendants committed by reason of insanity prior to Bolton v. Harris. However, the mere possibility of failure in local courts is not sufficient to obviate the exhaustion requirement.[14] The cases establish that the local courts must have an opportunity to consider the claim in order to fulfill the policies of the exhaustion requirement.[15] Thus, Johnson must present his argument premised on Waite v. Jacobs to the Superior Court before he

11. *See* Developments in the Law—Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1098, 1100–01 (1970).

12. The Superior Court of the District of Columbia is not an Article III court, but is rather an Article I court. *See* Palmore v. United States, 411 U.S. 389, 397–404, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973). The federal courts have acted to guarantee habeas in an Article III court for persons convicted in Article I courts. *See* Gusik v. Schilder, 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146 (1950); Rivera Escute v. Delgado, 439 F.2d 891 (1st Cir. 1971); Colliflower v. Garland, 342 F.2d 369 (9th Cir. 1965); *cf.* Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963); United States v. Hayman, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1952). *See also* U.S.Constit., art. I, § 9, cl. 2; United States v. Thompson, 147 U.S.App.D.C. 1, 452 F.2d 1333 (1971).

13. Palmore v. Superior Court, No. 74–1832 (D.C.Cir. pending); Presley v. Swain, No. 73–1975 (D.C.Cir. pending).

14. *See* Daegele v. Crouse, 429 F.2d 503, 505 (10th Cir. 1970), cert. denied, 400 U.S. 1010, 91 S.Ct. 570, 27 L.Ed.2d 623 (1971); Lucas v. Michigan, 420 F.2d 259, 261 (6th Cir. 1970).

15. *See* cases cited notes 79–10 *supra*. *See also* Fay v. Noia, 372 U.S. 391, 438, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). This Court has often recognized the policy inherent in the exhaustion requirement. *See* Tarlton v. Saxbe, 165 U.S.App.D.C. 293, at 304–305 n.34, 507 F.2d 1116, at 1127–1128 n.34 (D.C.Cir. Oct. 22, 1974); Sullivan v. Murphy, 156 U.S.App. D.C. 28, 52–54, 478 F.2d 938, 962–964, cert. denied, 414 U.S. 880, 94 S.Ct. 162, 38 L.Ed.2d 125 (1973); Williams v. Robinson, 139 U.S. App.D.C. 204, 432 F.2d 637 (1970). *See also* Brown v. Yeldell, 159 U.S.App.D.C. 339, 341, 487 F.2d 1210, 1212 (1973); Cooley v. Stone, 134 U.S.App.D.C. 317, 414 F.2d 1213 (1969).

may file a habeas petition in this Court. Whether Johnson must appeal an adverse ruling of the Superior Court is a question to be resolved on the basis of exhaustion doctrine and we need not consider it now.

The length of Johnson's incarceration coupled with the relative minor nature of the offense that precipitated it, all of which occurred in derogation of the suggestion of Waite v. Jacobs, might require us to dispense with the strict requirements of the futility doctrine if we thought it more probable than not that the Superior Court would deny Johnson's request for relief.[16] However, Johnson has presented us with a number of arguments which convince us that such a dispensation is not appropriate. Johnson notes that the burden of proof requirement of § 301(k)(3) is no more inflexible than the traditional burden of proof requirement in habeas corpus that this Court questioned in Waite v. Jacobs.[17] In this regard, Johnson notes that the legislative history of § 301(k)(3) indicates that it was linked with the new requirement that a defendant must prove by a preponderance of the evidence in a criminal proceeding that he was criminally insane in order to win acquittal.[18] The

legislative reasoning apparently was that this requirement of affirmative proof of insanity satisfied the standards of Bolton v. Harris since no person would be acquitted on the basis of a reasonable doubt as to his sanity and then automatically committed. Thus the chain of events in Johnson's case—acquittal because of a reasonable doubt about his sanity and thereupon an automatic commitment—is not authorized by the new statutory scheme. Johnson furthermore directs our attention to the equal protection issues found to be substantial in Waite v. Jacobs and argues that no reason exists, against an ambiguous legislative history, why those issues could not be avoided through statutory construction. These arguments are far from frivolous and thus we can not argue that the Superior Court would more likely than not fail to be impressed by them. We, therefore, affirm the order of the District Court dismissing the petition for a writ of habeas corpus for lack of jurisdiction.

Affirmed.

DANAHER, Senior Circuit Judge, concurs in the result.

---

16. Cf. Dixon v. Jacobs, 138 U.S.App.D.C. 318, 323, 427 F.2d 589, 594 (1970). Compare Johnson's case with Cross v. Harris, 135 U.S. App.D.C. 259, 418 F.2d 1095 (1969).

17. We are not convinced by the confident assertion in Rauh & Silbert, Criminal Law and Procedure: D.C. Court Reform and Criminal Procedure Act of 1970, 20 Amer.U.L.Rev. 252, 318 (1970) that the language of the statute prevents any inquiry into exceptions to the burden of proof requirement.

18. See 24 D.C.Code § 301(j) (1973). The constitutionality of this provision was upheld in United States v. (LaVance) Greene, 160 U.S. App.D.C. 21, 489 F.2d 1145 (1973), cert. denied, 419 U.S. 977, 95 S.Ct. 239, 42 L.Ed.2d 190 (1974). See the discussion in Rauh &

Silbert, supra note 16, at 321. Whether this new scheme is constitutional under the standards of Bolton v. Harris, 130 U.S.App.D.C. 1, 395 F.2d 642 (1968) is not before this Court on this appeal. We do note that a statutory scheme which both places the burden of proof on the defendant to win acquittal at a criminal trial and to thereby prove the necessity of his own civil commitment may raise Self-Incrimination questions. One might also question whether there is any necessary relation between proof of legal insanity at a criminal trial and proof of dangerousness under the relevant commitment statutes. Cf. United States v. Alexander & Murdock, 152 U.S.App. D.C. 371, 378–383, 471 F.2d 923, 960–965 (1972) (Bazelon, C. J., concurring in part, dissenting in part).